UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OKLAHOMA

PHILLIPS PETROLEUM COMPANY,    )
a Delaware corporation,        )
                               )
         Plaintiff,            )
vs.                            )   No. 04 CV 472-TCK (FHM)
                               )
DAVIS OIL CORPORATION,         )
an Oklahoma corporation        )
                               )
         Defendant.            )

ORDER

Now before this Court are Plaintiff's Motion for Summary Judgment (Dkt. No. 64) and Defendant's Motion for Summary Judgment (Dkt. No. 71).

**Standard on Summary Judgment**

Summary judgment is appropriate if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56 (c).  The Court must view the evidence and draw any inferences in a light most favorable to the party opposing summary judgment, but that party must identify sufficient evidence which would require submission of the case to a jury. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-52 (1986); *Mares v. ConAgra Poultry Co.*, 971 F.2d 492, 494 (10th Cir. 1992).  Where the nonmoving party will bear the burden of proof at trial, that party must go beyond the pleadings and identify specific facts which demonstrate the existence of an issue to be tried by the jury.  *See Mares*, 971 F.2d at 494.

**Case Overview**

Phillips Petroleum Company ("Phillips" or "Plaintiff") sued Davis Oil Corporation ("Davis

1

Oil" or "Defendant") for reimbursement of defense costs, indemnity payments, and attorneys fees based on Defendant's alleged failure to abide by its contractual obligation to defend and indemnify Plaintiff in connection with a personal injury suit brought by Lydia Cloud ("Ms. Cloud" or "Cloud") in the District Court for Creek County, Oklahoma. Ms. Cloud incurred severe personal injuries when she was engulfed in flames in a gasoline fire on February 16, 2002, while using a self-service pump at Mom & Pop's One Stop ("Mom & Pop's") in Bristow, Oklahoma. Mom & Pop's is a convenience store owned by Dub Bolin, operated by Carl and Misty Gomes, and supplied with fuel by Defendant. Defendant sold its own dispensing equipment to Bolin to be used at Mom & Pop's. Defendant hired Larry Bradham to install the dispensing equipment.

Pursuant to an agreement termed the New Business Conversion Program ("NBCP"), Plaintiff authorized Defendant to brand Mom & Pop's as a Phillips location and agreed to sell fuel to Defendant, which Defendant then resold to Mom & Pop's. The NBCP is a standard form prepared by Plaintiff and was executed by the parties in December of 2001.[1] In exchange for the right of Mom & Pop's to operate under Phillip's signage, Defendant agreed to defend and indemnify Plaintiff "from and against any and all claims, losses, liabilities, causes of actions, costs and expenses (including attorney's fees) of whatsoever nature arising, directly or indirectly, out of the letter agreement and/or the conduct of the parties to this letter agreement." (Pl.'s Mot. for Summ. J. Ex. 3.)

Ms. Cloud asserted claims in strict liability and negligence against Plaintiff and Defendant

---

[1] In March of 2000, Plaintiff and Defendant entered into an agreement termed the Branded Marketer Sales Contract ("BMSC"), in which Plaintiff generally agreed to sell petroleum products to Defendant and authorized Defendant to resell such products to retail stores branded with the Plaintiff's signage.

and alleged products liability claims against the manufacturers of the fuel nozzle and the vehicle involved in the incident. The matter was settled for a total of $2 million dollars. The nozzle manufacturer paid $1.25 million and Plaintiff paid $750,000. Plaintiff spent $140,147.67 in defending the Cloud litigation. After entering into the settlement agreement, Ms. Cloud filed a dismissal with prejudice, dismissing all of her claims against Defendant even though Defendant paid no monies in the settlement.

Plaintiff bases its claim for defense and indemnification primarily on the relevant provision of the NBCP. Alternatively, Plaintiff relies on the indemnification and defense provisions in the BMSC.

The relevant language of the NBCP is:

> *[Defendant] agrees to defend, indemnify and save harmless [Plaintiff]*, its affiliated and subsidiary companies, or its (their) directors, officers, agents and servants collectively referred to in this paragraph as ("Indemnitees"), *from and against any and all claims, losses, liabilities, causes of action, costs and expenses (including attorney's fees) of whatsoever nature arising, directly or indirectly, out of this letter agreement and /or the conduct of the parties to this letter agreement.* The foregoing obligation to defend, indemnify and save Indemnitees harmless shall not apply to incidents proximately caused by the sole negligence of Indemnitees, but shall apply to incidents caused in part by the negligence of the Indemnitees.

(Pl.'s Mot. for Summ. J. Ex. 3.) (emphasis added). The relevant language of the BMSC is:

> [Plaintiff] shall not be liable for any acts or omissions of [Defendant], his employees, agents, resellers, invitees, customers or common carriers.
> [Defendant] shall defend, indemnify, and save harmless Phillips, its affiliated and subsidiary companies and their directors, officers, agents and employees from and against any and all Losses for injury to or death of any person (including without limitation, Buyer or Buyer's employees, agents, resellers, invitees, common carriers or customers), or for damage to or destruction of any property, where such injury, death, damage or destruction directly or indirectly arises out of this contract, [Defendant's] business, the storage, handling, loading, transportation, sale or use of any Products purchased hereunder or the use of Signs furnished thereunder.

> The foregoing obligation to indemnify and save harmless [Plaintiff], its affiliated and subsidiary companies and their directors, officers, agents, and employees shall apply to Losses caused in whole or in part by [Defendant], or [Defendant's] resellers, employees, agents, invitees, common carriers or customers, but shall not apply to the extent Losses are caused by [Plaintiff], its affiliated or subsidiary companies or their officers, directors, agents, or employees.

(*Id.* at Ex. 3.)

### Applicable Law on Indemnity Agreements

Indemnity clauses are "generally enforceable when made at arm's length without disparity of bargaining power, and the intent of the parties is manifestly plain and unequivocal." *Colorado Mill. & Elevator Co. v. Chicago, R.I. & P.R. Co.*, 382 F.2d 834, 837 (10th Cir. 1967) (internal citations omitted). Accordingly, Oklahoma courts apply a three-pronged standard for testing the legal validity of contractual provisions such as the one found in the NBCP. The standard is "(1) the parties must express their intent to exculpate in unequivocally clear language; (2) the agreement must result from an arm's length transaction between parties of equal bargaining power; and (3) the exculpation must not violate public policy." *Huffman v. Saul Holdings Ltd. P'ship*, 194 F.3d 1072, 1081-82 (10th Cir. 1999) (applying Oklahoma law) (internal quotations and citations omitted) (*citing Transpower Constructors v. Grand River Dam Auth.*, 905 F.2d 1413, 1420 (10th Cir.1990)). Further, "where the indemnitor denies liability under the indemnity contract and refuses to assume the defense of the claim, then the indemnitee is in full charge of the matter and may make a good faith settlement without assuming the risk of being able to prove absolute legal liability for the actual amount of the damages." *Chicago, R.I. & P.R. Co. v. Dobry Flour Mills, Inc.*, 211 F.2d 785, 787-88 (10th Cir. 1954) (applying Oklahoma law). In that instance, the indemnitee "need not prove absolute legal liability or the actual amount of damages and must only show potential liability and

that the settlement amount was reasonable. Stated simply, the indemnitee must establish its decision to settle was reasonable." *Phillips Petroleum Co. v. Viola Industries, Elevator Div., Inc.* No. 80-1552, 1989 WL 134914, at *3 (D.Kan. Oct. 23, 1989) (unpublished) (internal citations omitted).

### A.    Triggering of Indemnity Agreement

Defendant's initial basis for denying liability under the indemnity agreement is that the Cloud incident did not arise of out of the work performed under the NBCP. Defendant maintains that Plaintiff's only conduct under the NBCP was to identify and approve the branding requirements and to the pay the marketer for assisting in the branding, and, Defendant says, Plaintiff does not allege that any of those activities was a "cause in fact" of the Cloud incident. Essentially, Defendant's argument is that its duty to indemnify only arises if there is a loss related to the performance of the contract. This argument, however, is contrary to the express language of the NBCP, which clearly requires indemnification for 1) the losses arising out of the NBCP itself; or (2) losses arising out of the conduct of the parties to the NBCP.

The Tenth Circuit has noted that the phrase "arising out of" in an indemnification agreement imparts a liberal or "all-inclusive" concept of causation. *See United States v. Hardage*, 985 F.2d 1427, 1435 (10th Cir. 1993). Thus, Plaintiff need only show that the losses incurred by Plaintiff arose out of either the NBCP or the conduct of Plaintiff and Defendant. Clearly, the *Cloud* litigation arose out of the NBCP, because the NBCP permitted Defendant to brand Mom & Pop's as a Phillip's location and to sell gasoline purchased from Plaintiff at that location. Stated another way, if the NBCP had not permitted Defendant to brand Mom & Pop's as a Phillip's location and to sell gasoline purchased from Plaintiff, Plaintiff would not have been a defendant in the *Cloud* case and would not have incurred the losses associated with that action. Ms. Cloud's loss arose out of the

conduct of parties to the NBCP.

**B.      Potential Liability of Plaintiff and Reasonableness of Settlement**

As Davis was also a defendant in the *Cloud* litigation, it cannot be disputed that Defendant was aware of Cloud's claims against Plaintiff in that case. Moreover, Plaintiff has presented ample evidence that it sent Defendant numerous demands for defense and indemnity in the *Cloud* action. Indeed, when Plaintiff scheduled a mediation with Ms. Cloud in November 2003, it renewed its indemnification demand to Defendant and invited Defendant to participate in the mediation on behalf of Plaintiff. However, Defendant expressly denied any obligation to defend and indemnify Plaintiff, despite the demands. Accordingly, because it is undisputed that Defendant denied liability under the indemnity contracts and refused to assume Plaintiff's defense in the *Cloud* action, Plaintiff need not prove its absolute liability but rather need only prove that: (1) it was *potentially* liable to Ms. Cloud; and (2) the settlement was reasonable.

The burden of establishing the Plaintiff was potentially liable to Ms. Cloud is easily met. One of the experts Ms. Cloud retained in the underlying litigation stated that the fire was ignited by static electricity. This evidence, along with evidence that Plaintiff had knowledge of the dangers posed by static electricity was to be presented to argue that Plaintiff had undertaken a duty to warn its customers of those dangers by hiring a contractor to place warning decals on the fuel pumps at all Phillips locations. However, it was undisputed in the *Cloud* litigation that Plaintiff's warning decals had not yet been installed at Mom & Pop's at the time Ms. Cloud was injured. Thus, if a jury had believed Ms. Cloud's evidence that the fire injuring her was ignited by static electricity, it could have held Plaintiff liable—either in strict liability or negligence or both—for failure to convey those warnings to Ms. Cloud prior to the time of her injuries. Plaintiff had potential liability to Ms.

Cloud.

In light of the severe and permanently disfiguring nature of the burns Ms. Cloud suffered, the $750,000 Plaintiff paid to her was reasonably related to those injuries. *Neustrom v. Union Pacific R.R. Co.*, 156 F.3d 1057, 1067 (10th Cir. 1998) ("Thus, in order to trigger an indemnitor's duty to cover a settlement, the indemnitee need only show that it was under potential liability ... and that the settlement amount was *reasonably related* to its employee's injuries.") (internal citations omitted) (emphasis added). As Plaintiff notes, the sole fact that the nozzle manufacturer was willing to pay $500,000 more than Plaintiff to settle the *Cloud* case supports the reasonableness of Plaintiff's settlement. As the Tenth Circuit has opined,

> Moreover, we note that [the indemnitor] was given the opportunity to defend [the indemnitee] or participate in the settlement negotiations. But it declined to do either, and instead left [the indemintee] to fend for itself. [The indemnitee] subsequently negotiated a prudent settlement. For us now to tell [the indemnitee] that its settlement may have been unwise would discourage compromise in all but the most egregious cases . . . .

*Missouri Pacific R. Co. v. Kansas Gas and Elec. Co.*, 862 F.2d 796, 801 (10th Cir. 1988).

### C.     Sole Negligence of Plaintiff

The NBCP requires Defendant to indemnify Plaintiff where Plaintiff is not solely responsible for the loss at issue. The facts of the *Cloud* litigation make it clear that Plaintiff was not the sole cause of the incident. Defendant thus focuses on the BMSC, arguing that it does not require Defendant to indemnify Plaintiff for Plaintiff's own acts/omission, the acts/omissions of others, or where the cause of a loss is not known. Because the Court finds Defendant liable for the indemnity and defense of the Plaintiff under the NBCP agreement, the Court need not address whether Defendant is also obligated to indemnify Plaintiff under the BMSC agreement.

**D.     Validity of NBCP Agreement**

**1.     Unequivocally Clear Language**

Defendant argues the NBCP provision is ambiguous because it does not address what the putative indemnitor's obligation is where an incident is caused in part by Plaintiff's negligence but is not caused in part by negligence of Defendant. As is clear from the NBCP indemnity provision, the provision applies to any and all claims regardless of whether Defendant was negligent. *See also supra* p. 7. There is nothing ambiguous about the provision, and Defendant cites no authority for its argument. Indeed, several courts have construed similar language to mean that if any party other than the indemnitee "also bears some of the responsibility for the injury, the 'sole negligence' provision is inapplicable." *Beloit Power Sys., Inc. v. Hess Oil V.I. Corp.*, 757 F.2d 1431, 1433 (3d Cir. 1985); *Kiser v. Bldg. Erection Servs.*, 973 F. Supp. 1269, 1275-76 (D. Kan. 1997); *Sherwood Constr. Co. v. Farmer Bros. Constr. Co.*, 877 P.2d 632, 632-34 (Okla. Ct. App. 1994). The unambiguous language of the NBCP simply does not lend itself to the interpretation that Plaintiff is entitled to indemnification and defense only where Defendant itself was negligent.

Defendant further contends it is not obligated to indemnify Plaintiff because the BMSC and NBCP agreements' "cross-referencing and inter-relation should be considered in the context of whether [the agreements] are ambiguous, confusing, unclear, and subject to several different interpretations." (Def.'s Reply Br. to Pl.'s Resp. to Def.'s Mot. fo Summ. J. p. 9.) These alleged ambiguities, Defendant argues, releases them from the duty to indemnify. Plaintiff acknowledges a limited cross-reference in the agreements in that the BMSC permits a branded marketer such as Defendant to apply to have a retail unit branded through a NBCP and that, upon execution of a NBCP, the fuel-volume requirements for the new unit are added to the marketer's volume

requirements under the BMSC. However, the agreements served very different purpose, they were entered into almost two years apart, and they entitled the parties to different rights and duties. The limited cross-reference does not compel the Court to read the agreements together. This conclusion is further required by the fact that both agreements contained merger clauses. "Typically, merger clauses are strong evidence that the parties did not intend to include terms not expressly incorporated into the document containing the clause." *Summit Contractors, Inc. v. Legacy Corner, LLC*, No. 04-6276, 2005 WL 2203248, at *3 (10th Cir. Sept. 12, 2005). The limited cross-reference in the agreements does not render them ambiguous.[2]

### 2. Equal Bargaining Power

Defendant spends considerable time arguing it did not have equal bargaining power to Defendant and therefore the indemnity provision of the NBCP is invalid. In connection with this argument, the parties assert the following facts. Dale Davis has owned Davis Oil since the late 1970's. Defendant is known in the industry as a wholesaler or "jobber," meaning Defendant purchases wholesale petroleum products from oil companies and then resells them to retail stores. Defendant currently has contracts to purchase petroleum products from Synergy Oil Company, Sinclair Oil Corporation, Lion Oil Company, Gary-Williams Energy Corporation, and Valero Energy Corporation. Like its contract with Plaintiff, its contracts with Synergy and Sinclair are branded marketing agreements. The shareholders and officers of Davis Oil are Dale Davis (president), Betty Davis (vice president), and their son Keith Davis (secretary/treasurer). Including the Davis family, Davis Oil employs a total of nine people and services a total of 75 to 80 regular customers at any

---

[2] Again, because the Court find the defense and indemnity provision in the NBCP requires Defendant to defend and indemnify Plaintiff for the costs associated with the Cloud litigation, the Court does not specifically address the BMSC.

time. Defendant's business is confined to Northeastern Oklahoma. Mr. Davis states that he has never had any discussion or negotiation with any oil company about an indemnification term and that only indemnification provision Mr. Davis has seen is in contracts with Plaintiff, and that he did not become "aware" of such provisions until the *Cloud* lawsuit. (Def.'s Mot. for Summ. J. Ex. 16 p. 60 ll. 7-10; p. 73 ll. 14-20.) In reviewing a contract, Mr. Davis typically looks at the gallon requirement and the length of the contract only. He does not typically read the entire contract. Defendant however admits that neither it nor Mr. Davis is a novice in the wholesale fuel business. Defendant acknowledges a lengthy history as a wholesale fuel distributor, and Mr. Davis has nearly 50 years of general experience in the oil industry. (*See* Pl.'s Mot. for Summ. J. Ex. 1 p. 5 ll. 13-15.)

The mere fact that Defendant may have been smaller than Plaintiff in size and revenues does nothing to change the undisputed fact that it and Mr. Davis have several years of experience in the gas wholesaler business and in the negotiation of contracts necessary to that business. Where "[n]one of the parties ... involved were neophytes or babes in the brambles of the business world," courts "eschew declaring voluntarily entered-into indemnification agreements void." *Neustrom v. Union Pacific R. Co.,* 156 F.3d 1057, 1062 (10th Cir. 1998) *(citing Knowles v. Burlington Northern R.R. Co. v. Asplundh Tree Expert Co.*, 856 P.2d 1352 (Kan. App. 1993). *See also Kinkead v. W. Atlas Int'l, Inc.*, 894 P.2d 1123, 1128 (Okla. Ct. App. 1993) (concluding that there was competent evidence to support jury's finding of equal bargaining power where "all contracting parties were quite knowledgeable in the field of oil and gas operations and that [a]ppellants had dealt with other drilling service companies for similar types of operations").

Last, Defendant's contentions that Mr. Davis did not read the contract and was unaware of the indemnity provisions in the NBCP, or indemnity provisions in general, are unavailing. In fact,

in response to Plaintiff's Motion for Summary Judgment, Defendant submitted a contract between Defendant and Sinclair which included an indemnification agreement.[3] Although Defendant represents that the "indemnification provision in Sinclair's supply agreement is very different than those upon which [Plaintiff] relies in the present matter," (Def.'s Resp. to Pl.'s Mot. for Summ. J. p. 17), it is of no consequence what the particulars of the indemnity agreements were. The fact is, Mr. Davis *had* entered into contracts with indemnity provisions prior to the one at issue. Despite his claims, Mr. Davis simply was not completely ignorant about indemnity agreements. "Where a party signs a written agreement, in the absence of false representations or fraud, he is bound by it, although ignorant of its contents." *Elsken v. Network Multi-Family Sec. Corp.*, 49 F. 3d 1470, 1474 (10th Cir. 1995) (applying Oklahoma law).

Additionally, the fact that the NBCP was a form contract does not prove that disparity in bargaining power existed. To wit, the Tenth Circuit refused to find unequal bargaining power between an alarm services company and its residential customer even where the company presented the contract to the customer "on a 'take-it-or-leave-it' basis and residents were not permitted to make changes to the" contract. *Id.* Further, it is clear Defendant did bargain for and receive certain concessions from Plaintiff. For example, Defendant selected its own payment method and negotiated with Plaintiff with respect to the projected monthly sales on which to base Defendant's advance payment, and when Mom & Pop's failed to meet those volumes in its first few months of operation, Mr. Davis requested and received leniency from Plaintiff and was not required to pay back any of the advance money. These concessions by Plaintiff clearly show that Defendant brought the requisite amount of bargaining power to the table. A review of the evidence shows that Defendant

---

[3] Defendant has primarily been a jobber for Sinclair.

Produce.

cannot show, as a matter of law, that it did not have the requisite business acumen and experience to knowledgeably enter into the NBCP agreement with Plaintiff.

### 3. Violation of Public Policy

The Oklahoma Supreme Court has rejected the argument that an indemnity clause is unenforceable merely because it seeks to indemnify a party against its own ordinary negligence. *Fretwell v. Protection Alarm Co.*, 764 P.2d 149, 152 (Okla. 1988); *see also Elsken v. Network Mulit-Family Security Corp.*, 838 P.2d 1007, 1011 (Okla. 1992). Rather, as the *Fretwell* court held, and has been discussed herein, such an agreement is valid and enforceable where the intention to indemnify a party from its own negligence is "unequivocally clear from the examination of the contract." *Id.* at 152-153. As previously discussed, the NBCP clearly expresses an intention that Plaintiff be indemnified from claims based in part on its own negligence. Defendant cites no authorities and offers no other argument as to why the defense and indemnification provision at issue in this case violate public policy.

### Conclusion

For the foregoing reasons, Defendant's Motion for Summary Judgment (Dkt. No. 71) is DENIED and Plaintiff's Motion for Summary Judgment (Dkt. No. 64) is GRANTED. Plaintiff shall prepare and submit an agreed order of judgment reflecting the amounts owed for the defense and indemnification of Plaintiff in connection with the *Cloud* litigation to the Court within ten days of the date of this Order.

IT IS SO ORDERED this 25 of January, 2006.

TERENCE KERN
United States District Judge